# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| NORENE JENKINS, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | Case No. 07 C 3427 |
| ) | |
| NATIONAL RAILROAD PASSENGER ) | Judge Virginia M. Kendall |
| CORPORATION d/b/a AMTRAK. ) | |
| ) | |
| Defendant. ) | |
| ) | |
| ) | |
| ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Norene Jenkins ("Jenkins" or "Plaintiff") filed suit against Defendant National Railroad Passenger Corporation ("Amtrak" or "Defendant") alleging various claims related to events leading up to, and after, she boarded an Amtrak train destined for Chicago. The Second Amended Complaint included the following ten claims: (1) intentional infliction of emotional distress; (2) negligent infliction of emotional distress; (3) negligence; (4) violation of the Americans With Disabilities Act (the "ADA"); (5) battery; (6) false imprisonment; (7) breach of contract; (8) negligent misrepresentation; (9) common law fraud; and (10) violation of the Illinois Consumer Fraud and Deceptive Business Practices Act ("CFA"). Amtrak previously moved to dismiss Counts I through VI and Counts VIII through X. On January 3, 2008, the Court granted Amtrak's Motion to Dismiss Counts IX and X on the basis of preemption, but denied Amtrak's Motion to Dismiss Counts I through VI and VIII ("January 3, 2008 Order"). With respect to Counts I through VI, the Court concluded that Jenkins failed to timely file her claims, but converted the Motion to Dismiss to one for summary judgment as to the issue of whether Amtrak is estopped from raising a statute

of limitations defense. Pursuant to the Court's January 3, 2008 Order, Amtrak now moves for summary judgment on Counts I through VI. For the reasons set forth below, Defendant's Motion for Summary Judgement on the Issue of Equitable Estoppel is granted and Counts I through VI are dismissed with prejudice.

## STATEMENT OF UNDISPUTED FACTS

Amtrak is a federally-chartered corporation doing business within Illinois.[1] (Pl. 56.1 Resp. ¶ 3.) At all relevant times, Jenkins was a resident of Cook County, Illinois. (Pl. 56.1 Resp. ¶ 2; Second Am. Compl. ¶ 1.) In August 2004, Jenkins purchased tickets to travel on Amtrak, departing from Illinois on August 9, 2004 and returning from California on August 12, 2004. (Pl. 56.1 Resp. ¶ 4; Second Am. Compl. ¶ 5.)

On August 10, 2005, Jenkins filed a Complaint against Amtrak in the Circuit Court of Cook County ("the Circuit Court"), alleging various claims related to events occurring during her August 12 return trip ("the First Action"). (Pl. 56.1 Resp. ¶ 5; Def. Mtn. Dismiss, Ex. A, Complaint, Aug. 12, 2005.) On March 10, 2006, Jenkins voluntarily dismissed the First Action pursuant to Section 2-1009 of the Illinois Code of Civil Procedure. (Pl. 56.1 Resp. ¶ 6.) Subsequently, on August 14, 2006, Jenkins filed a Complaint for Discovery in the Circuit Court pursuant to Section 2-402 of the Illinois Code of Civil Procedure ("Respondent in Discovery Action"). (Pl. 56.1 Resp. ¶ 7.) The Complaint for Discovery named Amtrak as a "Respondent in Discovery." (Pl. 56.1 Resp. ¶ 8.)

In September 2006, counsel for Jenkins, Troy Lundquist ("Lundquist"), and counsel for Amtrak, Susan Laing ("Laing"), spoke on two occasions regarding the Complaint for Discovery.

---

[1] Citations to "Plaintiff's Responses to Defendant's Statement of Material Facts" have been abbreviated to "Pl. 56.1 Resp." Citations to "Defendant's Response to Plaintiff's Rule 56.1(b)(3) Statement of Additional Facts have been abbreviated to "Def. 56.1 Resp."

2

(Pl. 56.1 Resp. ¶ 11.) First, on September 22, 2006, Laing called Lundquist to introduce herself as Amtrak's attorney and to inform him that Amtrak had been served with summons and the Complaint for Discovery (the "September 22 conversation"). (Def. 56.1 Resp. ¶ 2.) During the conversation, Laing and Lundquist discussed, among other things, how Lundquist was familiar with Laing's law firm as a result of each firm's respective practices in defending against medical malpractice cases. (Def. 56.1 Resp. ¶ 3; Def. Reply Mtn. Dismiss., Ex. A, Lundquist Dep. at 13-14.) Laing advised Lundquist that she believed the Complaint for Discovery was invalid because the complaint failed to name a defendant, but that she would research the issue further. (Pl. 56.1 Resp. ¶ 12; Def. 56.1 Resp. ¶ 4; Def. Reply Mtn. Dismiss., Ex. A, Lundquist Dep. at 14-15.) Lundquist disagreed with Laing's position regarding the Complaint for Discovery. (Pl. 56.1 Resp. ¶ 12.) Laing informed Lundquist that she needed to gather some additional information regarding the case and would follow-up with Lundquist. (Def. 56.1 Resp. ¶ 4.)

Three days later, on September 25, 2006, Laing placed a second telephone call to Lundquist (the "September 25 conversation"). (Def. 56.1 Resp. ¶ 5.) While it is undisputed that the two attorneys discussed the possibility of reaching a settlement in the matter, the parties disagree as to a majority of the communications relayed during the September 25 conversation. (*Id.*)

According to Lundquist, Laing advised Lundquist that she wanted to remove the matter to federal court, but was concerned with the timeliness of the removal if the desired removal was delayed.[2] ( Def. 56.1 Resp. ¶ 6; Pl. 56.1 Resp. ¶ 13; Def. Reply Mtn. Dismiss, Ex. A, Lundquist Aff.

---

[2] In her Responses to Defendant's Statement of Material Facts, Jenkins disputes Amtrak's characterization of Lundquist's testimony regarding his September 25 conversation and contends that it not does "accurately portray[] . . . or accurately reflect[] Mr. Lundquist's recollection as a whole." (Pl. 56.1 Resp. ¶ 13.) Jenkins does not, however, support her disagreement with any further explanation or specific reference to the record, as required by Local Rule 56.1. See L.R. 56.1(b)(3)(B). Thus, the Court deems this fact, as well as any other fact based on a similar objection, admitted.

¶ 8.) Laing told Lundquist that she did not want to have a situation where Jenkins would raise the statutory time limit as an objection. (Def. 56.1 Resp. ¶ 6; Def. Reply Mtn. Dismiss, Ex. A, Lundquist Aff. ¶ 8.) Laing further advised Lundquist that, although she did not believe the Respondent in Discovery Action could be maintained as filed, if Lundquist anticipated raising such an objection to removal, she wanted Lundquist to tell her of the same and she would not wait to file a motion for removal or dismissal. (Pl. 56.1 Resp. ¶¶ 12-13; Def. 56.1 Resp. ¶¶ 6-7; Def. Reply Mtn. Dismiss, Ex. A, Lundquist Aff. ¶ 8; Def. Reply Mtn. Dismiss, Ex. A, Lundquist Dep. 17-22.) Lundquist told Laing that he did not want to engage in further filings until the parties had a chance to see where the matter was heading. (Pl. 56.1 Resp. ¶ 13; Def. Reply Mtn. Dismiss, Ex. A, Lundquist Dep. 18-19.) The two attorneys then discussed Jenkins's general allegations and certain information in Lundquist's possession. (Pl. 56.1 Resp. ¶ 13; Def. Reply Mtn. Dismiss, Ex. A, Lundquist Dep. 19.) Laing told Lundquist that she was not in a position to answer the allegations. (Pl. 56.1 Resp. ¶ 13; Def. Reply Mtn. Dismiss, Ex. A, Lundquist Dep. 19-20.)

Lundquist further testified that, in conjunction with this conversation and as a result of Laing's question regarding the timeliness of removal, Lundquist inquired as to Laing's intention, if any, regarding any argument that the statute of limitations had expired. (Def. 56.1 Resp. ¶ 8; Def. Reply Mtn. Dismiss, Ex. A, Lundquist Dep. 21-22; Def. Reply Mtn. Dismiss, Ex. A, Lundquist Aff. ¶ 8.) Lundquist indicated to Laing that he did not believe the parties needed to address the timing of Amtrak's removal as long as there would be no argument asserted by Amtrak based upon the statute of limitations in the event that the parties proceeded by having Laing gather additional information and attempt settlement. (Def. 56.1 Resp. ¶ 9; Def. Reply Mtn. Dismiss, Ex. A, Lundquist Dep. 21-22; Def. Reply Mtn. Dismiss, Ex. A, Lundquist Aff. ¶ 8.) Laing stated that she

did not think Jenkins had any statute of limitations concerns. (Def. 56.1 Resp. ¶ 9; Pl. 56.1 Resp. ¶ 13; Def. Reply Mtn. Dismiss, Ex. A, Lundquist Dep. 21-22; Def. Reply Mtn. Dismiss, Ex. A, Lundquist Aff. ¶ 8.) Lundquist responded that he did not think Jenkins had any statute of limitations concerns either, but that, if the parties were going to forgo formal action in court while engaging in settlement discussions, he did not want to have disagreements regarding the statute of limitations issue. (Def. 56.1 Resp. ¶ 9; Def. Reply Mtn. Dismiss, Ex. A, Lundquist Dep. 21-22; Def. Reply Mtn. Dismiss, Ex. A, Lundquist Aff. ¶ 8.) Lundquist told Laing that, once Laing received the results of her internal investigation, he and Laing could further discuss the matter and see if the matter could be resolved. (Pl. 56.1 Resp. ¶ 13; Def. Reply Mtn. Dismiss, Ex. A, Lundquist Dep. 21-22.) Laing replied that his suggestion was fine and that she would get back to Lundquist. (Pl. 56.1 Resp. ¶ 13; Def. Reply Mtn. Dismiss, Ex. A, Lundquist Dep. 21-22, 30-31.)

Lundquist testified that he believed he and Laing reached a mutual understanding during the September 25 call: if Jenkins did not oppose Amtrak's eventual removal of the matter to federal court, Amtrak would not assert a statute of limitations defense with respect to Jenkins's claims. (Def. 56.1 Resp. ¶ 11; Def. Reply Mtn. Dismiss, Ex. A, Lundquist Dep. 24-25, 31-32; Def. Reply Mtn. Dismiss, Ex. A, Lundquist Aff. ¶ 8.) According to Lundquist, the understanding was reached for the agreed upon purpose of allowing the parties to exchange information informally and explore the possibility of settlement. (Def. 56.1 Resp. ¶ 11; Def. Reply Mtn. Dismiss, Ex. A, Lundquist Dep. 34-35; Def. Reply Mtn. Dismiss, Ex. A, Lundquist Aff. ¶ 8.)

Laing's account of the September 25 conversation differs in multiple respects. Laing admits that the parties discussed the possibility of reaching a settlement in the matter. (Def. 56.1 Resp. ¶ 5.) Laing also admits that the parties discussed removal, but contests the scope of their discussion

regarding removal. According to Laing, Laing told Lundquist that she did not believe the Respondent in Discovery Action was a proper complaint because it did not include a named defendant, that the action could not be maintained as filed, and that she did not have to appear in the state court proceeding, mainly because the bill for discovery did not require her appearance. (Def. 56.1 Resp. ¶¶ 6-7 Pl. Resp. Mtn. Dismiss, Ex. A, Laing Dep. at 21, 30-31, 38-39.) Laing also told Lundquist that, if the parties could not settle and if Jenkins re-filed the lawsuit, Laing would remove the case to federal court. (Def. 56.1 Resp. ¶¶ 6-7 Pl. Resp. Mtn. Dismiss, Ex. A, Laing Dep. at 21, 30-31, 38-39.) Laing denies, however, that she: (1) discussed removing the Respondent in Discovery Action to federal court; (2) raised any concerns regarding the timeliness of any potential removal; (3) inquired as to Lundquist's intention to raise the timeliness issue; or (4) reached any agreement with Lundquist with respect to the timeliness of removal. (Def. 56.1 Resp. ¶¶ 6-10; Pl. Resp. Mtn. Dismiss, Ex. A, Laing Dep. at 28-34, 38-39.) With respect to the statute of limitations issue, Laing admits that, at some point during the conversation, she told Lundquist that she did not believe Jenkins had any statute of limitations concerns and that Lundquist responded that he also did not believe that Jenkins had any limitations concerns.[3] (Def. 56.1 Resp. ¶ 10.) Laing denies, however, that any of the following communications occurred: (1) Lundquist inquired as to any argument that the statute of limitations would be raised as a defense; (2) Lundquist told Laing that he did not believe the parties needed to address the timing of removal as long as Amtrak would not assert a statute of limitations defense in the event that the parties proceeded by gathering information and attempting to settle; and (3) Lundquist told Laing that he did not want any disagreement

---

[3] In her deposition, Laing explained that she believed Jenkins did not have any statute of limitations concerns because, at the time, Jenkins still had approximately six months to recommence her lawsuit before the limitations period expired. (Pl. Resp. Mtn. Dismiss, Ex. A, Laing Dep. at 38-39.)

6

regarding the statute of limitations if the parties refrained from formal action while attempting to settle. (Def. 56.1 Resp.¶¶ 8-12; Pl. Resp. Mtn. Dismiss, Ex. A, Laing Dep. 28-34, 38-42.) Laing also denies that the parties ever reached the above-mentioned "mutual understanding," the purpose of which was to allow the parties to exchange information and explore settlement. (Def. 56.1 Resp.¶ 11; Pl. Resp. Mtn. Dismiss, Ex. A, Laing Dep. 28-34, 38-42.)

At the time of the September 25 conversation, Lundquist understood the law governing the limitations period as follows: within one year after the date of a plaintiff's voluntary dismissal of a suit, the plaintiff must either file the complaint or, with respect to a discovery action, file a motion to convert the respondent to a defendant. (Pl. 56.1 Resp. ¶ 17; Def. Reply Mtn. Dismiss, Ex. A, Lundquist Dep. 27-29.) He was not, however, aware of a specific expiration date with respect to the relevant limitations period. (Pl. 56.1 Resp. ¶ 17; Def. Reply Mtn. Dismiss, Ex. A, Lundquist Dep. 29.)

Lundquist did not write Laing to confirm that Amtrak had agreed not raise a statute of limitations defense to any future untimely complaint or a motion to convert filed by Jenkins. (Def. 56.1 Resp. ¶ 14; Pl. 56.1 Resp. ¶ 18.) Lundquist felt that such confirmation was unnecessary as a result of his familiarity with and respect for Laing's law firm. (Def. 56.1 Resp. ¶ 14; Pl. Resp. Mtn. Dismiss, Ex. A, Laing Dep. 13-14, 37.) According to Lundquist, as a result of this "mutual understanding," he did not seek to convert Amtrak to a defendant in the Respondent in Discovery Action until the parties exhausted their attempts to settle the matter. (Def. 56.1 Resp. ¶ 12; Pl. Ex. A-1, Supp. Lundquist Aff. ¶¶ 4-5.) Jenkins, through Lundquist, also relied upon this "mutual understanding" by refraining from converting Amtrak to a defendant and filing her complaint. (Def. 56.1 Resp. ¶ 12; Pl. 56.1 Resp, Ex. A-1, Supp. Lundquist Aff. ¶¶ 4-5.)

7

Neither counsel made a specific settlement demand or offer during the September 22 conversation or the September 25 conversation. (Pl. 56.1 Resp. ¶ 14.) Subsequent to the September 25 conversation, Lundquist made several attempts to contact Laing at her office and via her cellular phone. (Def. 56.1 Resp. ¶ 13.) Lundquist's billing records reflect that Lundquist placed "follow up" calls to Laing on October 30, 2006 and November 15, 2006. (*Id.*) While Lundquist left Laing several voicemail messages inquiring as to whether she had received any additional information regarding the matter and Amtrak's position regarding settlement, Laing did not respond. (Pl. 56.1 Resp. ¶ 15.) Nor did Laing (or Amtrak) appear at any of the Circuit Court Complaint for Discovery proceedings. (Pl. 56.1 Resp. ¶ 16.)

On January 25, 2007, the Circuit Court granted Jenkins a 60-day extension in the Respondent in Discovery Action to file a motion to convert. (Def. 56.1 Resp. ¶ 16.) As a result of Laing's failure to respond to Lundquist's inquiries, Lundquist realized that settlement was futile and that he needed to proceed with the lawsuit. (Def. 56.1 Resp. ¶ 17.) Thus, on April 13, 2007, Jenkins filed a motion to convert the Respondent in Discovery Action to an action at law, which the Circuit Court granted on April 16, 2007. (Def. 56.1 Resp. ¶¶ 17-18; Pl. 56.1 Resp. ¶ 13; Def. Mtn. Dismiss, Ex. E, Apr. 16, 2007 Order.) Nine days later, on April 27, 2007, Jenkins filed an Amended Complaint in the Circuit Court alleging to following claims: (1) intentional infliction of emotional distress; (2) negligent infliction of emotion distress; (3) negligence; (4) violation of the ADA; (5) battery; (6) false imprisonment; (7) breach of contract; and (8) negligent misrepresentation. (Pl. 56.1 Resp. ¶ 10; Def. Mtn. Dismiss, Ex. F, Am. Compl., April 27, 2007.) On June 18, 2007, Amtrak removed this action to federal court, without objection from Jenkins. (Def. 56.1 Resp. ¶ 19.) On August 9, 2007, Jenkins filed her Second Amended Complaint with this Court. (Def. 56.1 Resp. ¶ 20.)

8

## STANDARD OF REVIEW

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In determining whether a genuine issue of fact exists, the Court must view the evidence and draw all reasonable inferences in favor of the party opposing the motion. *Bennington v. Caterpillar Inc.*, 275 F.3d 654, 658 (7th Cir. 2001); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, the Court will "limit its analysis of the facts on summary judgment to evidence that is properly identified and supported in the parties' [Local Rule 56.1] statement." *Bordelon v. Chicago Sch. Reform Bd. of Trustees*, 233 F.3d 524, 529 (7th Cir. 2000). Where a proposed statement of fact is supported by the record and not adequately rebutted, the court will accept that statement as true for purposes of summary judgment. An adequate rebuttal requires a citation to specific support in the record; an unsubstantiated denial is not adequate. *See Albiero v. City of Kankakee*, 246 F.3d 927, 933 (7th Cir. 2001); *Drake v. Minnesota Mining & Mfg. Co.*, 134 F.3d 878, 887 (7th Cir. 1998) ("'Rule 56 demands something more specific than the bald assertion of the general truth of a particular matter[;] rather it requires affidavits that cite specific concrete facts establishing the existence of the truth of the matter asserted.'").

## DISCUSSION

On January 3, 2008, this Court determined that Jenkins failed to timely file Counts I through VI. (Jan. 3, 2008 Order 6-11.) Specifically, the Court concluded that, under Section 2-402 and Section 2-109(a) of the Illinois Code of Civil Procedure, Jenkins was required to file the six claims by March 10, 2007. (Jan. 3, 2008 Order 6-11.) In response, Jenkins contended, among other things,

9

that Amtrak "waived" this statute of limitations defense by engaging in conduct that lulled Jenkins into a false sense of security. (Pl. Resp. Mtn. Dismiss 4-6.) Construing Jenkins's argument as one based upon the principles of equitable estoppel, the Court converted Amtrak's Motion to Dismiss to one for summary judgment to determine whether Amtrak is estopped from raising a statute of limitations. (Jan. 3, 2008 Order 11-16.)

As a preliminary matter, Jenkins asserts that the Court incorrectly interpreted and limited the scope of Jenkins's arguments regarding waiver when it converted the Motion to Dismiss to one for summary judgment. According to Jenkins, her response was not limited to estoppel, as the Court previously determined; rather, it contained arguments regarding traditional waiver in addition to "waiver by estoppel." While Jenkins now submits that she sought to rely on both theories, Jenkins's response to Amtrak's Motion to Dismiss contains no argument or indication that Jenkins had previously contemplated any such argument. As noted by the Court in its January 3, 2008 Order, waiver and estoppel are separate and distinct concepts. *See Vaughn v. Speaker*, 533 N.E.2d 885, 890 (Ill. 1988); *Salloum Foods & Liquor, Inc. v. Parliament Ins. Co.*, 388 N.E.2d 23, 27 (Ill. App. Ct. 1979). Traditional waiver generally is defined as "the voluntary and intentional relinquishment of a known right by conduct inconsistent with an intent to enforce that right." *Ciers v. O.L. Schmidt Barge Lines, Inc.*, 675 N.E.2d 210, 213 (Ill. App. Ct. 1996). In contrast, estoppel may apply when, among other things, the defendant, through his conduct, "lull[ed] the [plaintiff] into a false sense of security, thereby causing [her] to delay the assertion of [her] rights." *Griffin v. Willoughby*, 867 N.E.2d 1007, 1015 (Ill. App. Ct. 2006); *Marks v. Johnston City*, 315 N.E.2d 342, 343 (Ill. App. Ct. 1974). Estoppel focuses not on the defendant's intent, but on the effects of his conduct on the plaintiff. *See Vaughn*, 533 N.E.2d at 890; *Salloum*, 388 N.E.2d at 27-28.

Jenkins's arguments in her response to Amtrak's Motion to Dismiss relied only on the latter theory. Jenkins began her argument regarding waiver by asserting that "Amtrak's arguments . . . are barred by equitable considerations." Citing to *Marks v. Johnston City*, 315 N.E.2d 342, 343 (Ill. App. Ct. 1974), Jenkins then argued that Amtrak waived its statute of limitations defense because Laing's statements to Lundquist during the September 2006 phone conversations, as well as her subsequent actions (or failure to act), lulled Lundquist into a false sense of security regarding the need to timely file the current action. (Pl. Resp. Mtn. Dismiss 4-6.) This argument focuses not on Amtrak's and/or Laing's intentional relinquishment of a known right, but rather on the effect of Laing's conduct on Lundquist's belief that he could delay the filing of this action. Further, the only legal standard (and legal authority) cited by Jenkins in support of the substantive "waiver" argument – "the defendant's conduct lulls the plaintiff into a false sense of security" – is a principle utilized by Illinois courts in conjunction with the equitable estoppel analysis. *See, e.g., Griffin*, 867 N.E.2d at 1015; *Pack v. Santa Fe Park Enters., Inc.*, 568 N.E.2d 360, 652 (Ill. App. Ct. 1991); *Marks*, 315 N.E.2d at 343. Finally, the Court notes that Jenkins never sought reconsideration of the Court's interpretation of her "waiver" argument after the Court issued its January 3, 2008 Order.

For the reasons stated above, the Court, consistent with its January 3, 2008 Order, interprets Jenkins's waiver arguments as limited to the equitable principles of estoppel.[4]

---

[4] Even if the Court were to consider Jenkins's traditional waiver argument, Jenkins has failed to create a triable issue as to whether Amtrak waived its statute of limitations defense. As noted above, "[w]aiver is the voluntary and intentional relinquishment of a known right by conduct inconsistent with an intent to enforce that right." *Ciers v. O.L. Schmidt Barge Lines, Inc.*, 675 N.E.2d 210, 213 (Ill. App. Ct. 1996); *see also Miller v. Willow Creek Homes, Inc.*, 249 F.3d 629, 631 (7th Cir. 2001). Waiver of a right may arise either expressly or impliedly through "conduct inconsistent with an intent to enforce that right." *Id.* When claiming implied waiver, the plaintiff "has the burden of proving a clear, unequivocal and decisive act of its opponent manifesting an intention to waive its rights." *Id.* In the present case, Jenkins submits that Laing expressly or, alternatively, impliedly waived the limitations defense during the September 25 conversation between Laing and Lundquist. Even under Jenkins's version of the facts, Laing's statement regarding the limitations period - when considered in the context of the September 25 conversation or Amtrak's conduct as a whole - is not evidence of express waiver. Nor could a reasonable trier of fact conclude that the statement constitutes "a clear,

11

Jenkins contends that Amtrak is estopped from asserting a statute of limitations defense with respect to six claims: (1) intentional infliction of emotional distress; (2) negligent infliction of emotional distress; (3) negligence; (4) violation of the ADA; (5) battery; and (6) false imprisonment. (January 3, 2008 Order, 6-11.) Whether Amtrak is estopped from raising a limitations defense with respect to Jenkins's state law claims (Counts I, II, III, V, and VI) and federal law claim (Count IV) is governed by Illinois law and federal law, respectively. For the reasons set forth below, the Court concludes that Jenkins has failed to create a genuine issue of material fact as to whether Amtrak is estopped from raising a statute of limitations defense with respect to Counts I through VI and, therefore, dismisses Counts I through VI with prejudice.

I.   Equitable Estoppel Under Illinois Law (Counts I, II, III, V, and VI)

Under Illinois law, equitable estoppel bars a defendant from raising a statute of limitations defense when the defendant "lulls the [plaintiff] into a false sense of security, thereby causing [her] to delay the assertion of [her] rights." *Griffin*, 867 N.E.2d at 414. A party claiming estoppel in this context must demonstrate the following six requirements by clear and convincing evidence: "'(1) the other person misrepresented or concealed material facts; (2) the other person knew at the time he or she made the representations that they were untrue; (3) the party claiming estoppel did not know that the representations were untrue when they were made and when that party decided to act, or not, upon the representations; (4) the other person intended or reasonably expected that the party claiming estoppel would determine whether to act, or not, based upon the representations; (5) the party claiming estoppel reasonably relied upon the representations in good faith to his or her detriment; and (6) the party claiming estoppel would be prejudiced by his or her reliance on the

---

unequivocal and decisive act of its opponent manifesting an intention to waive its rights." *Id.* Accordingly, Amtrak did not waive its statute of limitations defense.

representations if the other person is permitted to deny the truth thereof.'"[5] *Orlak v. Loyola Univ. Health Sys.*, 228 Ill. 2d. 1, 21-22 (2007) (*quoting DeLuna v. Burciaga*, 857 N.E.2d 229, 249 (Ill. 2006)); *see also Griffin*, 867 N.E.2d at 414. "It is not necessary that the defendant intentionally mislead or deceive the plaintiff. All that is required is that the plaintiff reasonably relied on the defendant's conduct or representations in delaying suit." *Orlak*, 228 Ill. 2d. at 22 (*citing DeLuna v. Burciaga*, 857 N.E.2d 229, 249 (Ill. 2006)). In addition, the doctrine of equitable estoppel incorporates a concept of due diligence as to a party seeking to invoke equitable estoppel. *Shropshrear v. Corp. Counsel of Chi.,* 275 F.3d 593, 598 (7th Cir. 2001).

Jenkins argues that Amtrak is estopped from raising a limitations defense as a result of the statements made by Laing to Lundquist during the September 25 conversation. Specifically, Jenkins maintains that, as a result of this conversation, Lundquist believed the parties reached the mutual understanding that Jenkins would not contest the timeliness of Amtrak's removal of the action to federal court and Amtrak would not raise a statute of limitations defense in the event that the parties could not resolve the dispute through settlement. Jenkins further submits that summary judgment

---

[5] In its Memorandum of Law In Support of Defendant's Motion for Summary Judgment on the Issue of Equitable Estoppel, Amtrak identifies and applies the six equitable estoppel elements articulated above. (Def. Mem. Summ. Jmt. 6.) In response, Jenkins contends that Amtrak misinterpreted the Court's January 3, 2008 Order because the Court converted Amtrak's Motion to Dismiss to one for summary judgment for the purpose of determining whether Amtrak was precluded from raising a limitations defense under a theory of "waiver by estoppel," not equitable estoppel.

Jenkins has misinterpreted the Court's January 3, 2008 directive. While the Court noted in its previous order that Jenkins appeared to limit her arguments regarding waiver to a theory of "waiver by estoppel," it also recognized that this theory is essentially one of equitable estoppel. (January 3, 2008 Order 13-14); *see also Vaughn v. Speaker*, 533 N.E.2d 885 (Ill. 1988) (determination of whether appellate court correctly concluded "that evidence suggested the possibility that defendants' insurance company may have lulled plaintiffs into a false sense of security, thereby causing them to delay the assertion of their rights" is governed by principles of equitable estoppel); *Griffin v. Willoughby*, 867 N.E.2d 1007, 1015 (Ill. App. Ct. 2006) (*quoting Mitchell v. State Farm Fire & Casualty Co.,* 796 N.E.2d 617, 619 (Ill. 2003)) (equitable estoppel precludes statute of limitations defense when defendant's "'actions during negotiations are such as to lull the [plaintiff] into a false sense of security, thereby causing him to delay the assertion of his rights'"); *Pack v. Santa Fe Park Enterprises, Inc.*, 568 N.E.2d 360, 363 (Ill. App. Ct. 1991) (same); *Salloum Foods & Liquor, Inc. v. Parliament Ins. Co.*, 388 N.E.2d 23, 27 (Ill. App. Ct. 1979). The Court emphasized, in both its January 3, 2008 Order as well as a subsequent order entered on January 17, 2008, that summary judgment was limited to the issue of equitable estoppel. Thus, the Court will limit its analysis to principles of equitable estoppel.

is inappropriate because the parties disagree as to many of the details regarding the statements made during the September 25 conversation.[6] While the existence of equitable estoppel is generally a question of fact, the determination can be a question of law, appropriately decided by the Court on a motion for summary judgment where "the facts are undisputed and reasonable persons could not differ as to the inferences to be drawn from the facts presented." *Pack*, 568 N.E.2d at 363. Even under Jenkins's version of the events, no reasonable person could infer that Amtrak, through misrepresentation or concealment, lulled Jenkins into a fall sense of security or that Jenkins reasonably relied on Amtrak's representations in good faith to her detriment. Thus, the Court concludes, as a matter of law, that Amtrak is not estopped from raising a limitations defense.

The Court begins its analysis with the fifth element of equitable estoppel: whether Jenkins reasonably relied upon Amtrak's representations in good faith to her detriment. Jenkins contends that Laing's statement that Laing did not think Jenkins had any statute of limitations concerns, when considered in the context of the September 25 conversation and Lundquist's familiarity with Laing's law firm, illustrates that both Lundquist's belief that the parties reached a mutual understanding based on the *quid pro quo* and Lundquist's reliance on Laing's representations were reasonable. While a plaintiff is entitled to all reasonable inferences that can be drawn from the facts presented, the Court is not required to strain to find such an unreasonable inference. Laing's statements, when considered in the context of the September 25 conversation and Lundquist's awareness of Laing's

---

[6] In her response to Amtrak's Motion for Summary Judgment, Jenkins also contends that Lundquist's statement in his affidavit and deposition that the parties had reached an agreement during the September 25 conversation creates a genuine issue of material fact as to whether Laing and Lundquist reached a definitive agreement. (Pl. Resp. Mtn. Summ. Jmt. 10.) Lundquist's self-serving assertion, standing alone, is insufficient to create a genuine issue of material fact. *See Haywood v. N. Am. Van Lines*, 121 F.3d 1066, 1071 (7th Cir. 1997) ("Conclusory allegations and self-serving affidavits, if not supported by the record, will not preclude summary judgment."). Instead, the Court must focus its estoppel inquiry on the conduct that led Lundquist to believe that the parties had reached a mutual understanding or agreement and consider whether this belief, as well as Lundquist's reliance on Amtrak's representations, was reasonable. *See Orlak v. Loyola Univ. Health Sys.*, 228 Ill. 2d. 1, 21-22 (2007).

14

law firm, not create a triable issue as to whether Amtrak promised to or the parties agreed that Amtrak would not raise a statute of limitations defense. Lundquist's statement regarding the statute of limitations does not reflect a mutual understanding that Amtrak would not raise a limitations defense. It was not an affirmative statement indicating a promise; rather, it was merely an expression of her belief as an attorney – made nearly six months prior to the expiration of the limitations period – regarding the then current status of the applicable statute of limitations period. Further, while a defendant's conduct may, in certain circumstances, be sufficient to lull even a party's attorney into a false sense of security, "representations which [sic] a court may find reasonable for a layman to rely upon will not necessarily be reasonable for an attorney to rely on." *Niziolek v. Chi. Transit Auth.*, 620 N.E.2d 1097, 1104 (Ill. App. Ct. 1993) (internal quotations omitted). While Lundquist did not know on September 25 the specific expiration date of the statute of limitations, he was aware of the limitations rules governing Jenkins's action. In light of such knowledge, the nature of Laing's statement in the context of the conversation, and the dispositive effect of a limitations defense, no reasonable trier of fact could conclude that Lundquist (and Jenkins) reasonably relied on Laing's statement and, as a result, delayed the filing of the current action.

Nor does the record provide any additional evidence regarding Amtrak's conduct from which one could infer that Lundquist's reliance on Laing's statement was reasonable. For instance, Amtrak did not concede liability either explicitly or implicitly. *See Vaughn*, 533 N.E.2d at 891. The parties had not engaged in any substantive settlement discussions or negotiations beyond agreeing that the parties would attempt to explore settlement in the future. *See Suing v. Catton,* 254 N.E.2d 806, 809-10 (Ill. App. Ct. 1970) (question of fact as to estoppel where defendant engaged in "more than mere

15

investigation and negotiation"); *see also AXIA, Inc. v. I. C. Harbour Constr. Co.,* 501 N.E.2d 1339, 1346 (Ill. App. Ct. 1986) ("[M]ere pendency of negotiations conducted in good faith, however, is insufficient to estop the defendant"). To the contrary, the parties had no further contact after the September 25 conversation, despite Laing's statement that she would follow-up with Lundquist and Lundquist's several subsequent attempts to inquire as to the status of Amtrak's investigation. As discussed in further detail below, Lundquist's continued reliance on Laing's ambiguous statement when confronted with nearly six months of silence on the part of Laing also speaks to the unreasonableness of Lundquist's reliance. Further, there is no evidence that Amtrak encouraged Jenkins to delay the filing of her complaint. *See, e.g., Doe v. Blue Cross & Blue Shield United*, 112 F.3d 869, 876-77 (7th Cir. 1997) (defense attorney's reminder to plaintiff's attorney that plaintiff's attorney "kindly agreed to wait for a response to [a settlement letter], when [the defense attorney] will be available to consider the matter" interpreted as an implicit request to delay suit when considered in conjunction with the parties' continuous settlement negotiations and other communications). Finally, as noted above, Jenkins maintained legal representation throughout the period at issue. *See Smith v. Powell*, 441 N.E.2d 175, 177-78 (Ill. App. Ct. 1982). Thus, given the absence of any evidence from which one could reasonably conclude that Jenkins reasonably relied on Amtrak's conduct in good faith and to her detriment, the Court concludes as a matter of law that Jenkins cannot establish the fifth element of estoppel and, therefore, Amtrak is not estopped from raising a statute of limitations defense.[7] *Compare Smith*, 441 N.E.2d at 177-78 (plaintiff failed to

---

[7] Nor has Jenkins submitted evidence to establish several of the remaining estoppel requirements. For example, with respect to the first element, Jenkins has failed to provide any evidence to support her assertion that Amtrak misrepresented or concealed material facts during the September 25 conversation or otherwise. To the contrary, Laing's statement during the September 25 conversation regarding the statute of limitations was unequivocally true: on September 25, Jenkins still had approximately five and one-half months to timely file Counts I through VI. "Without misrepresentation or concealment of a material fact, equitable estoppel does not apply." *Parks v Kownacki*, 737 N.E.2d

16

establish estoppel where defendant engaged in routine investigation and agreed to schedule a deposition on a date after the statute of limitations expired), *with Doe*, 112 F.3d at 876-77; *Nat'l R.R. Passenger Corp. v. Crown-Through Corp.*, 524 N.E.2d 954, 957-58 (Ill. App. 1988) (plaintiff's attorney reasonably believed that defense attorney's comment that the parties would "fight[] it out at a later date" meant that they would defer litigation when the parties agreed to present a united front with respect to third-party personal injury suits and postpone their litigation and engaged in eight years of conduct that reinforced the understanding that the parties would defer their dispute).

Also fatal to Jenkins's estoppel claim is her lack of due diligence. *See Shropshrear*, 275 F.3d at 597-98. Under Illinois law, the party claiming estoppel must have had no knowledge or convenient means of discovering the true facts about which it was allegedly deceived. *Pack*, 568 N.E.2d at 363. In the present case, Lundquist relied on an ambiguous and vague statement made by Laing regarding her belief as to the limitations period. Lundquist, as Jenkins's attorney, was aware of the relevant limitations rules on September 25, 2006 and the potential dispositive effect of such a defense on his client's claims. In such circumstances, Lundquist easily could have, and should have, followed up with Laing to confirm his understanding of the purported agreement reached by the parties. For example, Lundquist could have memorialized the alleged promise in writing or followed up with Laing via email, telephone, or fax to confirm that Amtrak would not raise the limitations defense, should such a defense become available in the future. The record reveals no such effort on the part of Lundquist. While Lundquist attempted to follow-up with Laing, he did so only with respect to settlement and Laing's internal investigation of the events surrounding Jenkins's

---

287, 296 (Ill. 2000); *see also Hollander v. Brown*, 457 F.3d 688, 695 (7th Cir. 2006). In a similar vein, the record is also devoid of any evidence from which one could infer that Laing (or Amtrak) knew that her representations were untrue (the third estoppel requirement).

17

claims. Further, Laing failed to appear at any Respondent in Discovery proceedings in the Circuit Court and did not respond to any of Lundquist's voicemails from September 2006 through the filing of the current action in April 2007. This failure to respond or appear at the Circuit Court proceedings provided Lundquist with yet another reason to timely file a complaint and preserve Jenkins's rights.[8] "A party claiming the benefit of an estoppel cannot shut his eyes to obvious facts, or neglect to seek information that is easily accessible, and then charge his ignorance to others." *Id.* (internal quotations omitted); *see also In re Krueger*, 192 F.3d 733, 741 (7th Cir. 1999). Given Lundquist's (and Jenkins's) failure to exercise reasonable diligence in the circumstances presented, Jenkins cannot now rely on Amtrak's alleged representations to save Counts I, II, III, V, and VI. *See Nickels v. Reid*, 661 N.E.2d 442, 447-48 (Ill. App. Ct. 1996) (*citing Solt v. McDowell*, 272 N.E.2d 53, 56 (Ill. App. Ct. 1971)); *Krueger*, 192 F.3d at 741.

For the reasons stated above, the Court concludes, as a matter of law, that Amtrak is not estopped from raising a statute of limitations defense with respect to Counts I, II, III, V, and VI, and, therefore, dismisses Counts I, II, III, V, and VI with prejudice.

II.     Equitable Estoppel Under Federal Law (Count IV)

The federal doctrine of equitable estoppel will preclude a defendant from asserting the statute of limitations defense where the plaintiff establishes that: (1) the defendant took "active steps to prevent the plaintiff from suing in time" and (2) the plaintiff actually and reasonably relied on the

---

[8] The Court further notes that Jenkins did in fact have the option of initiating the current action prior to expirations of the limitations period. To be sure, Jenkins had previously prepared and filed a complaint against Amtrak in August 2005 that she subsequently dismissed voluntarily on March 10, 2006. A comparison of the August 2005 complaint with the untimely April 2007 complaint reveals that both complaints are based on an almost identical set of factual allegations. Jenkins did, however, assert four additional new claims (battery, false imprisonment, breach, negligent misrepresentation) in the April 2007 complaint.

18

defendant's conduct or representations.[9] *Smith v. Potter*, 445 F.3d 1000, 1010 (7th Cir. 2006) (internal quotations omitted). Similar to her state law estoppel theory, Jenkins argues that Amtrak is estopped from raising a limitations defense as a result of the statements made by Laing to Lundquist during the September 25 conversation. While a plaintiff's reasonable reliance on a defendant's promise not to raise the limitations defense may estop a defendant from later asserting the defense, *see Bomba v. W.L. Belvidere, Inc.*, 579 F.2d 1067, 1071 (7th Cir. 1978), the Court need not delve into an intricate analysis of whether federal equitable estoppel applies in this case, as the Court already has concluded that Jenkins has failed to create an genuine issue of material fact as to whether she reasonably relied on Amtrak's representations in forbearing suit. Thus, for the reasons that justify the Court's conclusion that, as a matter of law, Jenkins could not establish reasonable reliance with respect to Counts I, II, III, V, and VI, Jenkins also has failed to create a triable issue as to whether Jenkins actually and reasonably relied on Amtrak's conduct in forbearing suit with respect to Count IV. *See Cange v. Stotler & Co., Inc.*, 826 F.2d 581, 585 (7th Cir. 1987) ("Because the federal doctrine of equitable estoppel is based on deeply rooted common law principles, it is not surprising that it resembles Illinois principles of equitable estoppel.").

Accordingly, the Court concludes that Amtrak is not estopped from raising a statute of

---

[9] Seventh Circuit precedent is unclear as to whether the plaintiff must also show improper purpose on the part of the defendant before equitable estoppel will apply. *Compare Smith v. Chicago Heights*, 951 F.2d 834, 841 (7th Cir. 1992) (courts should consider "evidence of improper purpose on the part of the defendant and the defendant's actual or constructive knowledge of the deceptive nature of its conduct"), *with Cange v. Stotler & Co.*, 826 F.2d 581, 587 (7th Cir. 1987) (*quoting Bomba v. W.L. Belvidere*, 579 F.2d 1067, 1071 (7th Cir. 1978)) ("'It is not necessary that the defendant intentionally mislead or deceive the plaintiff, or even intend by its conduct to induce delay.'"). Because the Court concludes that Jenkins has failed to create a triable issue as to the reasonableness of her reliance on Amtrak's conduct, the Court need not consider the issue at this time.

limitations defense with respect to Count IV and, therefore, dismisses Count IV with prejudice.[10]

## **CONCLUSION AND ORDER**

For the reasons stated herein, Defendant's Motion for Summary Judgment is granted and Counts I through VI are dismissed with prejudice.

So ordered.

_____
Virginia M. Kendall, United States District Judge
Northern District of Illinois

Date: June 20, 2008

---

[10] Amtrak submits additional theories in support of its argument that it is not estopped from raising a statute of limitations defense with respect to Count IV. Because the Court concludes that Jenkins has failed to submit evidence from which one could reasonably infer that she reasonably relied on Amtrak's conduct and representations in forbearing suit, the Court need not address Amtrak's alternate arguments.